# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | |
|---|---|
| **JAMES PATRICK BRYANT,** | )<br>) |
| Petitioner, | ) Case No. 7:18CV00399<br>) |
| v. | ) **OPINION**<br>) |
| **WARDEN, GREEN ROCK**<br>**CORRECTION CENTER,** | ) By: James P. Jones<br>) United States District Judge<br>) |
| Respondent. | ) |

*Jonathan P. Sheldon, Sheldon & Flood, PLC, Fairfax, Virginia, for Petitioner; Lauren C. Campbell, Assistant Attorney General, Office of the Attorney General of Virginia, Richmond, Virginia, for Respondent.*

In his Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254 ("Petition"), a Virginia inmate contends that his confinement pursuant to a judgment entered by a state court is unconstitutional. Upon review of the record, I conclude that the respondent's Motion to Dismiss must be granted.

I.

In its order denying Bryant's appeal, the Court of Appeals of Virginia found the following facts:[1]

> In the early morning of January 7, 2012, a friend found Seams in an alley near the home Seams shared with his mother. Seams was

---

[1] The state appellate court stated the facts in the light most favorable to Bryant, because it was addressing his appellate claim that he was entitled to have the jury instructed on the lesser included offense of involuntary manslaughter. Nevertheless, I will defer to these findings of fact as required under 28 U.S.C. § 2254(e)(1).

bloody and in distress. Seams said that "Jamie" had stabbed him, and he pointed in the direction of a garage at the end of the alley. A trail of blood led to the garage. There was money with blood on it on the ground nearby. A blood trail also connected the garage to the residence of [Bryant].

Police officers were called to the scene and immediately went to [Bryant]'s home. [Bryant] had blood on his left ear and the left shoulder area of his shirt. The police detained [him] and removed him from the scene. Emergency medical personnel arrived at the scene and transported Seams to the hospital. However, Seams had sustained a fatal stab wound to the neck and he subsequently died. Seams also had a stab wound to the backside of his right forearm.

When the police asked [Bryant] if he knew Seams, [Bryant] said they had a longstanding feud and he "finally put an end to it." [Bryant] later said he had acted in self-defense. [Bryant] said he had met Seams in the garage. [Bryant] had hoped to obtain drugs from Seams without paying for them. Seams met [Bryant] in the garage, but Seams left after finding out [Bryant] had no money. [Bryant] already owed Seams $300. Seams returned a few minutes later. [Bryant] told the police that Seams, who was holding a knife, backed him into a corner. [Bryant] said he was scared of Seams. [Bryant] indicated that he pushed away Seams' hand, and the knife went upward and struck Seams' neck.

Susie Worrell, who lived with [Bryant], testified that [Bryant] was covered in blood when he returned from the garage on the night of the incident. [Bryant] handed her a knife and told her to "do something" with it. Worrell had found the knife while working near a highway. She last had seen the knife in the garage. [Bryant] gave Worrell the bloody clothing he had been wearing and told her to wash it. He also gave her his work boots and said to "put them up." Worrell took the clothes and put them in the washing machine in the basement. She hid the boots in a box in the basement.

 At the conclusion of the evidence, the trial court instructed the jury on first-degree murder, second-degree murder, second-degree felony homicide in the commission of attempting to obtain drugs, and voluntary manslaughter. The trial court also instructed the jury

regarding self-defense. The jury found [Bryant] guilty of second-degree murder.

Br. Supp. Mot. Dismiss Ex. A, 2–3, ECF No. 14-1. In December of 2012, the trial court sentenced Bryant to 30 years in prison as recommended by the jury.

Bryant appealed the trial court's refusal of an involuntary manslaughter jury instruction. The court of appeals addressed this claim as follows:

> "Involuntary manslaughter is defined as the accidental killing of a person, contrary to the intention of the parties, during the prosecution of an unlawful, but not felonious, act, or during the improper performance of some lawful act." *Gooden v. Commonwealth,* 226 Va. 565, 571, 311 S.E.2d 780, 784 (1984). There was no evidence to prove that [Bryant] stabbed Seams during an unlawful, but not felonious, act or in the improper performance of a lawful act. [Bryant] claimed that he had called Seams to the garage to obtain drugs from him. If the jury concluded [Bryant] accidentally killed Seams during the course of the attempted drug transaction, it could have found [Bryant] guilty of second-degree felony homicide, as instructed by the trial court.

*Id.* at 4. The court of appeals found that because the evidence did not support the requested instruction, the trial court did not err in refusing it.

Bryant also contended on appeal that the trial court erred in denying his motion for a new trial, in which he had argued that the Commonwealth had failed to disclose purported impeachment information about Sergeant Kenneth Duncan, the lead investigator in Bryant's case, in violation of the rule in *Brady v. Maryland*, 373 U.S. 83 (1963). Specifically, in seeking a new trial, Bryant

> produced evidence that, in an unrelated criminal trial on July 18, 2011, it was alleged that Duncan had violated the trial court's order

> not to discuss his trial testimony with other witnesses outside the courtroom. [Bryant's] attorney argued that he learned of the allegation regarding Duncan after [Bryant's] trial had concluded. Counsel maintained that Duncan had been evasive and untruthful when confronted by the trial court in the other proceeding regarding a violation of the witness sequestration ruling.

*Id.* at 2. The court of appeals denied relief upon finding that the information about Duncan did not warrant a new trial, because it was not material exculpatory evidence that the Commonwealth was obligated to reveal to Bryant's trial counsel. *Id.*

The Supreme Court of Virginia refused Bryant's subsequent petition for an appeal in a summary order dated January 2, 2014.

On January 5, 2015, Bryant, by counsel, timely filed a state post-conviction petition in the trial court. He alleged that his trial counsel had provided ineffective assistance by:

(a) failing to present evidence favorable to the defense from Alvin Roman, Denneka White, and Sakoyia Smith;

(b) failing to argue to the jury any of the facts in support of manslaughter;

(c) failing to explain how the law of heat of passion could be applied;

(d) failing to urge for a finding of manslaughter if the jury did not find self-defense (with fault); and

(e) committing cumulative errors.

In support of a motion to dismiss, the Commonwealth submitted an affidavit from Bryant's trial counsel ("First Affidavit"). The trial court heard oral argument on the pleadings and made findings on the record that Bryant had failed to establish ineffective assistance under *Strickland v. Washington*, 466 U.S. 668 (1984). By order dated December 9, 2015, the court dismissed the petition. Bryant sought an appeal to the Supreme Court of Virginia, which refused it by a summary order dated June 24, 2016.

On July 26, 2017, Bryant filed a second post-conviction petition in the state trial court, raising the following claims:

1. Counsel provided ineffective assistance by failing to avoid a conflict of interest and breaching the attorney-client privilege when he provided to the respondent an affidavit that included false substantive evidence to be used against Bryant as an exhibit to the Motion to Dismiss Bryant's first habeas corpus petition.

2. The Commonwealth failed to disclose material impeachment evidence about Loretta A. providing false eye-witness testimony at trial and about altered investigator tapes.

3. Improper custodial interrogation after Bryant had asked for counsel violated his Fifth Amendment right against compulsory self-incrimination.

4. The Commonwealth denied Bryant due process and a fair trial by using this false evidence against him: (1) the affidavit of defense counsel in Bryant's first habeas proceeding; (2) false eyewitness testimony of Loretta A.; (3) altered tapes of Bryant's interviews with police; and (4) the proffer of Bryant's folding knife as the actual murder weapon.

> 5. The courtroom conduct of Loretta A. was so inherently prejudicial that it deprived Mr. Bryant of a fair trial.
>
> 6. Defense counsel was ineffective for failing to discover, object to, or mitigate the government's use of false evidence and the prejudicial courtroom conduct of Loretta A.

Bryant contended that certain of these claims were based on recently discovered favorable evidence that the prosecution had suppressed, in violation of *Brady*. In support of a motion to dismiss, the respondent offered another affidavit from trial counsel ("Second Affidavit"). On September 20, 2017, the trial court dismissed Bryant's petition. The court found the petition to be untimely filed, pursuant to Va. Code § 8.01-654(A)(2), as well as successive, pursuant to Va. Code § 8.01-654(B)(2), and insufficient on the merits because Bryant had failed to provide any evidence to support his allegations of false testimony, alteration of tapes, or suppression of exculpatory information.[2] The Supreme Court of Virginia refused Bryant's subsequent appeal by a summary order dated July 11, 2018.

In Bryant's initial pro se § 2254 Petition in this court, he alleged the following claims for relief:

---

[2] The state trial court also found that Bryant's trial counsel had not violated any state rule of professional responsibility by providing affidavits in support of the Commonwealth's arguments for dismissal. *See* Virginia Code Ann. § 8.01-654(B)(6) ("If petitioner alleges as a ground for illegality of his detention the inadequacy of counsel, he shall be deemed to waive his privilege with respect to communications between such counsel and himself to the extent necessary to permit a full and fair hearing for the alleged ground."). As the state court noted, counsel asserted that he had not disclosed any confidential information to anyone, and Bryant's belief that counsel had done so was based on a typographical error in counsel's First Affidavit.

(1) "Bryant was denied due process by the failure to disclose impeachment information that witness Alverson was not present at the scene of the incident."[3] Pet. 6, ECF No. 1.

(2) "Bryant was denied due process by the prejudicial courtroom conduct of witness Alverson."[4] *Id.* at 8.

(3) Bryant was denied due process by the use of false evidence at trial: (a) the Commonwealth's use of "[t]he false testimony of Alverson undermined Bryant's self-defense argument and inflamed the jury's sentencing decision"; (b) an "investigator's false testimony about the absence of evidence of injuries to Bryant also undermined Bryant's claim of self-defense" against the younger, larger, more muscular Seams; and (c) the Commonwealth's introduction of "Bryant's knife as the murder weapon, particularly given the absence of Seam's knife, was false evidence which would have caused the jury to wrongfully conclude Bryant was the aggressor." Pet. Attach. A., 8–9, ECF No. 1.

---

[3] The state habeas court found:

> Loretta Alverson testified that she was like a mother to Seams and that, after hearing screams, she went into the alley behind her house where she saw Seams bleeding while a neighbor, Alvin Roman, applied pressure to Seams' neck. Alverson testified that when she asked Seams who stabbed him, he identified "Jamie." Her testimony was consistent with that of Roman, a friend of Seams, who testified that he found Seams bleeding from his neck in the alley, attempted to stop the bleeding, and was told by Seams that "Jamie" had stabbed him.

Br. Supp. Mot. Dismiss Ex. B, 6 n.2, ECF No. 14-2.

[4] Bryant alleges that during the prosecution's summation of the case, Alverson was seated next to the jury box and suddenly collapsed. The paramedics who had just testified for the Commonwealth revived her. She also testified for the Commonwealth at sentencing. Bryant complains that the spectacle of "Alverson's courtroom conduct was, and was likely intended to be, improperly prejudicial." Pet. Attach. A, 8, ECF No. 1.

(4) "Bryant was denied due process and equal protection by the use of false and improper affidavits to dismiss his first and second state habeas petitions." *Id*. at 9.

(5) Trial counsel provided ineffective assistance at trial by failing to "(1) call any defense witnesses; (2) argue manslaughter to the jury; (3) discover and argue witness Alverson was not actually present at the scene; (4) mitigate the improper prejudicial courtroom conduct of Alverson; (5) discover and argue Bryant sustained bruises and cuts from being attacked by Seams; (6) discover and argue Bryant's knife was not the weapon which killed Seams; (7) investigate what happened to the knife wielded by Seams; and (8) discover and argue the lead investigator's history of perjury." Trial counsel also provided ineffective assistance of counsel during the state habeas proceedings by providing his First and Second Affidavits in violation of legal professional responsibility rules, and providing false and substantive evidence against his client in both affidavits. *Id*. at 11.

The respondent filed a Motion to Dismiss, contending that Bryant's Petition was untimely filed, and Bryant filed a pro se response. Months later, counsel entered an appearance and filed on Bryant's behalf a Motion for Evidentiary Hearing on Bryant's Petition for a Writ of Habeas Corpus and Request for Rule 15(a)(2) Leave to Amend. For reasons which I will discuss, I conclude based on the present record that Bryant's Petition must be dismissed as untimely filed. Therefore, his motion seeking an evidentiary hearing and amendment of the record will be denied as futile.

II. Discussion.

A. Statute of Limitations.

The one-year period of limitation for filing a habeas petition under § 2254 begins to run on the latest of four dates:

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

Bryant's convictions became final, and his federal habeas time clock under § 2244(d)(1)(A) began to run on April 2, 2014, 90 days after the Supreme Court of Virginia refused his direct appeal, and he failed to file a petition for a writ of certiorari with the United States Supreme Court. Sup. Ct. R. 13(1) (establishing deadline of 90 days from entry of state court final judgment to file certiorari petition); *Clay v. United States*, 537 U.S. 522, 525 (2003) (holding that judgment

becomes final once time for filing certiorari petition has expired or when certiorari is denied). On January 5, 2015, after 278 days of the federal filing period had elapsed, Bryant filed his state petition in the state trial court. While that petition was pending, the federal filing period was tolled, or paused. *See* 28 U.S.C. § 2244(d)(2) (providing that "properly filed" application for state post-conviction or other collateral review tolls federal filing period). After the state trial court dismissed the petition on June 24, 2016, the filing period began running again. Eighty-seven days later, on September 19, 2016, that one-year filing period expired.

Bryant did not file his second state habeas petition until July 26, 2017. The pendency of that petition cannot toll the federal filing period under § 2254(d)(2), because the period had already expired the previous year.[5] *Wall v. Kholi*, 562 U.S. 545, 547 (2011). Moreover, because the state court dismissed this second petition

---

[5] After Bryant submitted his § 2254 Petition, the court conditionally filed it, notified him that it appeared to be untimely filed, and granted him an opportunity to provide additional information and argument on that issue, which he did. *See* Resp., ECF No. 5. Thereafter, the court served the Petition on the respondent. Bryant contends that in so doing, the court made a finding that his petition was *timely* filed. He is mistaken. In the conditional filing order, the court expressly stated that service of the petition would merely indicate the court's decision not to "*summarily* dismiss the petition as untimely filed." Order ¶ 6, ECF No. 3 (emphasis added). That order also stated, "If warranted, respondent may present evidence and argument . . . that the petition should be dismissed as untimely filed." *Id*. at ¶ 7.

as untimely filed and successive, it cannot qualify as properly filed under § 2254(d)(2).[6] *Artuz v. Bennett*, 531 U.S. 4, 8 (2000).

Bryant did not file his federal habeas Petition until August 2018, nearly two years after the federal filing period under § 2244(d)(1)(A) had expired. Accordingly, his Petition was untimely filed absent a showing of facts sufficient to start calculation of the filing period under another subsection of § 2244 or to warrant equitable tolling of the filing period.

Bryant asserts that because many of his claims rely on newly discovered, allegedly suppressed evidence, I should calculate his one-year federal filing period under § 2244(d)(1)(B), based on the elimination of a state-created impediment, or under § 2244(d)(1)(D), when he discovered the factual predicate of most of his current claims. Bryant's theory is that the alleged suppression of certain evidence constituted an impediment under § 2244(d)(1)(B), and his late discovery of the suppressed evidence falls under § 2244(d)(1)(D). I find no merit to these tolling arguments in his case.

---

[6] Bryant argues that the state trial court incorrectly applied Virginia's statute of limitations and that the Supreme Court of Virginia so recognized by refusing his habeas appeal upon finding "no reversible error in the judgment complained of." Order, *Bryant v. Davis*, Record No. 171685 (Va. July 11, 2018). On habeas review, I cannot second-guess a Virginia court's interpretation or application of Virginia law. *Estelle v. McGuire*, 502 U.S. 62, 72 (1991). I also cannot find that the Supreme Court of Virginia's order indicates a dismissal of Bryant's habeas appeal on the merits of the claims and not on the procedural defaults found by the circuit court. *Ylst v. Nunnemaker,* 501 U.S. 797, 803 (1991) (holding that federal habeas court must presume that "[w]here there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground").

Bryant's tolling theory rests on his allegation that in the spring of 2017, he retained Peter Sullivan, a licensed private investigator, to review his case. In July of 2017, Bryant received Sullivan's report ("Report"), detailing allegedly "crucial new evidence" related to Bryant's trial purporting to prove that:

> (1) Alverson was not present at the scene as she had testified; (2) about how Alverson falling-out [in the courtroom] impacted the jury; (3) Bryant's knife offered as the murder weapon had no trace evidence, evidence of cleaning, and had a broken hinge; (4) the lead investigator, who had a history of perjury, altered interrogation tapes used at trial; and (5) that, contrary to their testimony, police knew Bryant was bleeding and bruised after the fight with Seams.

Pet. Attach. A, 5, ECF No. 1. Bryant relied on information from the Report in many of his claims in his second state habeas petition and has relied on it for some of the claims before this court. The late-filed motion by habeas counsel seeks to add to the record additional documentation of information Sullivan discovered in 2017: a declaration by Sullivan, dated March 21, 2019, describing an interview with Corey Doyle, an individual who tried to stop Seams' bleeding and says that he never saw Alverson near enough to Seams to hear him accuse Bryant as his attacker; and a declaration by Sergeant Tony Smallwood of the Covington Police Department, dated March 22, 2019, stating that when Smallwood arrived at the scene of the stabbing, only Doyle was with Seams, and Alverson was not near him as she testified, although he saw her the crowd nearby.

A petitioner who invokes § 2244(d)(1)(B) must demonstrate a state-created impediment that prevented him from earlier discovery of the basis of his habeas claims. As the state court found, Bryant has presented no evidence demonstrating that the law enforcement authorities investigating his case had and failed to disclose to his defense counsel any of the purportedly new evidence he has developed through his privately-retained investigator. Thus, I find no basis to determine the timeliness of Bryant's federal claims under § 2244(d)(1)(B).

I also find no support for Bryant's claims for tolling under § 2244(d)(1)(D). This section contemplates new discovery of "the factual predicate of a petitioner's claims," in other words, "the vital facts underlying [the] claims," not merely "evidence that might support his claims." *McAleese v. Brennan*, 483 F.3d 206, 214 (3d Cir. 2007) (internal quotation marks and citation omitted). This section requires proof of a petitioner's active investigation, since the new filing period under § 2244(d)(1)(D) begins when a petitioner's claim first "*could have been discovered through the exercise of due diligence.*" 28 U.S.C. § 2244(d)(1)(D) (emphasis added); *Flanagan v. Johnson*, 154 F.3d 196, 199 (5th Cir. 1998) ("Section 2244(d)(1)(D) does not convey a statutory right to an extended delay . . . while a habeas petitioner gathers every possible scrap of evidence that might . . . support his claim."); *Johnson v. McBride*, 381 F.3d 587, 589 (7th Cir. 2004) ("A

desire to see more information in the hope that something will turn up differs from 'the factual predicate of [a] claim or claims' for purposes of § 2244(d)(1)(D).").

Bryant would have the start of the federal habeas limitations period reset to July of 2017, when his investigator allegedly issued his report — nearly a year after Bryant's federal habeas filing period expired in September of 2016.[7] Yet, Bryant offers no explanation for waiting so long to *retain* the investigator. He also fails to show that he could not have discovered much of his new evidence by other means long before his investigator did, since it is centered on evidence known to him at the time of trial. I find no evidence that Bryant diligently pursued the facts in support of his current claims so as to invoke § 2244(d)(1)(D).

In any event, even if I were to trigger the calculation of Bryant's federal habeas limitation period under §§ 2244(d)(1)(B) or (D), based on the information he allegedly received in the Sullivan Report in July of 2017, Bryant failed to file his federal habeas petition within one year after that date. Bryant signed and dated his § 2254 petition on August 14, 2018. For purposes of this opinion, I will assume without finding that Bryant also properly delivered the petition to prison officials on that date for mailing to the court, and therefore, I will consider the petition filed as of August 14, 2018. Fed. R. App. P. 4(c); *Houston v. Lack*, 487

---

[7] The declarations attached to the belated Motion to Amend, dated in March of 2019, concern facts included in Sullivan's Report in July of 2017. Bryant does not argue, and I cannot find, that the 2019 dates on these declarations affect, in any way, his argument for timeliness under § 2244(d)(1)(D).

U.S. 266 (1988). Bryant argues that the one-year filing period under §§ 2244(d)(1)(B) or (D), beginning in July of 2018, was tolled during the pendency of his second state habeas proceeding — from July 26, 2017, until July 11, 2018. Because the state courts dismissed Bryant's second habeas petition as both untimely filed and successive, however, I cannot consider that state petition to have been properly filed, as required for tolling under § 2244(d)(2).[8] *Artuz*, 531 U.S. at 8. Thus, I cannot find Bryant's current claims were filed within one year of the trigger dates he proposes under subsection (B) or (D) of § 2244(d)(1).

Finally, I also find no basis for invoking equitable tolling in this case. Equitable tolling occurs only if a petitioner shows "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and *prevented* timely filing," *Holland v. Florida*, 560 U.S. 631, 649 (2010) (internal quotation marks and citation omitted), or that he is actually innocent of his convictions, *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013). A district court may apply equitable tolling only in "those rare instances where — due to circumstances external to the party's own conduct — it would be unconscionable to enforce the limitation period against the party and gross injustice would result."

---

[8] Bryant argues that the Commonwealth's alleged suppression of the evidence his investigator discovered in July of 2017 tolled the state habeas limitation period, pursuant to Virginia Code Annotated § 8.01-229(D). As discussed, this court cannot second-guess the Supreme Court of Virginia's decision that Bryant's second habeas petition was procedurally barred and, therefore, not properly filed. *Estelle*, 502 U.S. 62, at 72.

*Rouse v. Lee*, 339 F.3d. 238, 246 (4th Cir. 2003). A petitioner asserting equitable tolling "'bears a strong burden to show specific facts'" that demonstrate both elements of the test. *Yang v. Archuleta*, 525 F.3d 925, 928 (10th Cir. 2008) (citations omitted). As such, the petitioner must state facts showing his exercise of "[t]he diligence reasonably expected from, and ordinarily exercised by, a person who seeks to satisfy a legal requirement or to discharge an obligation." *Lawrence v. Lynch*, 826 F.3d 198, 204 (4th Cir. 2016) (citation omitted).

Bryant's equitable tolling arguments simply do not include facts that make the required showings for that extraordinary remedy. He complains that "an infamous local investigator" involved in the criminal proceedings put "pressure on the prosecutor" to inflate Bryant's "stand-your-ground self-defense" actions during an "unexpected Friday night fight" with a "troubled victim" into a "high profile first degree murder trial." Resp. 9, ECF No. 5. Bryant claims that these circumstances let the prosecutor to present "the emotional perjured testimony and courtroom misconduct of Alverson." *Id.* at 9–10. Bryant also points to his trial attorney's purportedly unethical action of providing affidavits to support the respondent's motions to dismiss Bryant's state habeas petitions.[9] None of these

---

[9] I also note that Bryant's contentions of ineffective or unethical representation by his trial attorney or other constitutional violations during state habeas proceedings cannot support any claim for relief under § 2254. *Wright v. Angelone*, 151 F.3d 151, 159 (4th Cir. 1998) (holding that "a challenge to Virginia's state habeas corpus proceedings, cannot provide a basis for federal habeas relief"), citing *Bryant v. Maryland*, 848 F.2d

circumstances aids Bryant in proving that he pursued with due diligence the facts necessary to his current claims, that some factor external to himself prevented him from earlier discovery of those facts, or that he is actually innocent of the second-degree murder of Seams. Thus, I find no basis for invoking equitable tolling to rescue his federal habeas claims from being dismissed as untimely filed.

III. CONCLUSION.

For these reasons, I conclude that Bryant's Petition is untimely. On that ground, I will grant the the Motion to Dismiss and deny as futile Bryant's motion seeking an evidentiary hearing and leave to amend his petition. [10]

A separate Final Order will be entered herewith.

DATED: September 27, 2019

/s/ *James P. Jones*
United States District Judge

---

492, 493 (4th Cir. 1988) (holding that errors and irregularities in connection with state post-conviction proceedings are not cognizable on federal habeas review).

[10] Because the Petition was not timely filed, I need not further discuss the respondent's alternative arguments that Bryant's claims are procedurally barred and without merit under *Brady*.